## Patrick McLain, administrator, v. Chicago & Northwestern Railway Company.

### Gen. No. 11,923.

## George Gabriel, administrator, v. Chicago & Northwestern Railway Company.

### Gen. No. 11,924.

1. NEGLIGENCE—*when railroad company not guilty of, towards persons wrongfully on its grounds.* Where persons undertake to cross railroad tracks by passing over the grounds of a railway company, even though they do not know that they are upon such grounds, they do so at their peril, notwithstanding the company had not previously seen fit to enforce its rights and prevent people from crossing there, and such company is not bound to protect or provide safeguards for such persons so using its grounds.

2. RES IPSA LOQUITUR—*when doctrine of, does not apply.* This doctrine does not apply in favor of one who is a trespasser or one who is at the place of injury under a permission or mere naked license.

Action on the case for death caused by alleged wrongful act. Appeals from the Superior Court of Cook County; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Affirmed. Opinion filed October 6, 1905.

**Statement by the Court.** These suits are brought to recover for the same cause of action, viz. alleged negligence causing the death of two women in the same accident upon the tracks of the Chicago & Northwestern Railway Company at Evanston in Cook County. The suits were consolidated for trial in the Superior Court and have been consolidated here.

The accident occurred the evening of January 26, 1900. The deceased, Mrs. Maria McLain and Mrs. Pauline Gabriel, lived on the west side of the railroad. They were returning homeward in a buggy drawn by a gentle horse from a visit on the east side. They were observed driving along in an ordinary way, about two blocks apparently from the place where the accident occurred, and their bodies were found shortly after when, as the witness states, it "was just

getting dusk and the electric lights were lit." It is said there were no witnesses to the accident. One of the women, Mrs. Gabriel, was still alive and conscious when she was picked up, and told a police officer that they were on the way home "and came down Sherman avenue to what she thought was Church street, but instead of turning on Church street she turned on Clark street, which she supposed was Church street." On Church street there was a regular public crossing. Clark street is one block north of Church. The place of the accident was at or near what would have been the intersection of Clark street in the city of Evanston with the railroad tracks of appellee, if Clark street had been opened across the railroad right of way. This had never been done. The railroad company owned the fee of the right of way and no provision of any kind had been made there for the crossing of teams or persons. There are five tracks at this point, the eastward of which—and it was from the east the deceased attempted to cross—was used as a switch and storage track upon which cars were placed to be loaded or unloaded and where they could be reached by teams driven alongside the track. This track was a little above the level of the adjoining street known as East Railroad avenue, which runs adjacent to and parallel with the railroad right of way. The next track is stated in appellant's brief to be elevated from fifteen to eighteen inches above the switch track and there is evidence tending to show the difference in grading between the east or, teaming track and the main track next west is "about twenty inches and quite abrupt," the embankment consisting of cinders and crushed stones.. The photographs in evidence show the rails standing up above the ties, with no planking or roadway of any kind and with no provision for passing over either for teams or foot passengers. At the time of the accident a freight car was standing on the switch track a little north of where the center of Clark street would be if extended across the tracks. It appears from tracks made by a buggy that the deceased approached from the north, turned westward and passed over the switch track a few feet south of the freight

car there standing and on to the main tracks where they were struck almost immediately afterward by an approaching train. The trial' court instructed the jury to find the defendant not guilty:

ELMER H. ADAMS, for appellants.

S. A. LYNDE, for appellee; LLOYD W. BOWERS, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is contended that the court erred in directing a verdict for the defendant; that whether or not the deceased were exercising due care for their own safety, whether they were trespassers and whether the railroad company was negligent in failing to protect that part of their right of way where the accident occurred were questions of fact which should have been submitted to a jury.

There is no controversy as to the material facts. It is urged that the railroad company was negligent in failing to protect that part of its right of way so as to prevent injury to persons making the mistake of supposing that it was a public crossing. It is said that persons coming west on Clark street looking across the railroad tracks could see Clark street continued on the other side and would naturally suppose that the street crossed the railroad; that in fact it was used as a public crossing prior to and at the time of the accident. There is evidence which tends to show that in a few instances light or unloaded wagons had been driven across the tracks at this point and that persons on foot were in the habit of crossing there whenever convenience dictated. There is no evidence, however, that the railroad company had done anything to encourage such use. Cars were stored along the switch track at such places as desired without reference to convenience of anyone who might desire to cross. The tracks stood up above the surface of the ground in such a way as to make crossing difficult for a wagon or buggy, and there was no provision for crossing by teams or foot passengers. The company owned

the right of way in fee. It appears that those who were in the habit of crossing the tracks there occasionally, knew and recognized the fact that it was not a public crossing. Indeed this seems to have been so obvious that so far as appears no one ever made the mistake of supposing it to be such. One of the unfortunate victims of this accident, Mrs. Gabriel, explained their presence there to be owing to a mistake in locality, not on the ground that they thought there was a public crossing on Clark street. There is evidence which tends to show that persons were in the habit of crossing in the entire open space between the streets running east and west either side of Clark street as well as where Clark street if extended would have crossed the right of way. According to testimony given by a witness for appellants "they did that when they wanted to go anywhere in the space between Emerson street and Church street. I do not know of any particular place where they were in the habit of crossing." Such use as this testimony discloses would not in law create a public crossing nor give to the public a right of way. The deceased were not authorized, because the railroad company had not previously seen fit to enforce its rights and prevent people from crossing there, to use it for their own convenience. When they did so, though it may be by mistake, it was at their peril, and the company "was not bound to protect or provide safeguards for persons so using its grounds for their own convenience. The place was one of danger and such persons went there at their own risk, and enjoyed the supposed implied license subject to its attendant perils. At the most there was here no more than a mere passive acquiescence in this use. A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner to provide against the danger of accident." I. C. R. R. Co. v. Godfrey, 71 Ill., 500-507. It was held in the case thus cited that the plaintiff stood "in no more favorable position than that of a wrongdoer and trespasser," and that when thus in the wrong or not in the exercise of a legal right or while at the time enjoying a privilege or favor granted without com-

pensation or benefit to the party granting it of whose careless-ness complaint is made, such person "must use extraordinary care before he can complain of the negligence of another." To the same effect is I. C. R. R. Co. v. Hetherington, 83 Ill., 510-513; Wabash R. R. v. Jones, 163 Ill., 167-172, *et seq.;* I. C. R. R. Co. v. O'Connor, 189 Ill., 559-565-6; James v. I. C. R. R. Co., 195 Ill., 327-333; Smith v. C. & E. I. R. R. Co., 99 Ill. App., 296-299. In attempting to cross the tracks at that point the deceased were undoubtedly trespassers, and the railroad company owes "no duty to a trespasser upon its right of way or tracks except that it will not wantonly or will-fully inflict injury upon him." I. C. R. R. Co. v. O'Connor, 189 Ill., 559-564, *supra.* The deceased were not injured on or near depot grounds and I. C. R. R. Co. v. Hammer, 72 Ill., 347, cited by appellants, is not in point.

The only question presented is whether the trial court erred in directing the jury to find a verdict in favor of the defend-ant. It is evident from what has been said that there could be no recovery under the evidence except upon proof that the injuries were inflicted by a wanton and reckless disregard of duty on the part of the appellee or its employees. No such claim is made and none could be under the evidence. If Clark street had been laid out by the municipal authorities and opened on either side of appellee's right of way and per-sons were in consequence sometimes led to trespass on the railroad for convenience, appellee was not responsible. There was no evidence in the case which with all its legal inferences fairly tended to establish the plaintiff's cause of action. The rule *res ipsa loquitur* has no application in the case. C. & E. I. R. R. Co. v. Reilly, 212 Ill., 506-510.

The judgment of the Superior Court must be affirmed.

*Affirmed.*